| | | |
|---|---|---|
| BRYAN W. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24-CV-121 |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

The plaintiff, Bryan Johnson, worked with United Parcel Service for many years. A few months before his retirement benefits vested and after an investigation into a sexual harassment complaint against him, UPS terminated his employment. Mr. Johnson alleges his termination violated the Age Discrimination in Employment Act, North Carolina public policy, and the Employee Retirement Income Security Act. UPS moves for summary judgment. Because Mr. Johnson's evidence does not create disputed questions of material fact, UPS's motion for summary judgment will be granted.

### I.     Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In analyzing a summary judgment

motion, courts "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir. 2023).

The moving party has the initial burden of demonstrating the absence of any material issue of fact; once the moving party meets its initial burden, the non-moving party must come forward with evidentiary material demonstrating the existence of a genuine issue of material fact requiring a trial. *Id.* at 709–10; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "[C]onclusory allegations or denials, without more, are insufficient to preclude granting a summary judgment motion." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (cleaned up).

II. Facts

Mr. Johnson began working for UPS in 1995. Doc. 36-1 at ¶ 3. He "performed well" during his employment at UPS and received no "negative feedback" before the incident that UPS says led to his termination. *Id.*

In November 2022, Mr. Johnson was an On-Road or On-Car Supervisor, and part of his job was to accompany UPS drivers on their routes for training purposes. *Id.*; Doc. 32-1 at ¶ 3. On November 2, 2022, he accompanied a new female driver, M.M., for training. Doc. 36-1 at ¶ 4. When they returned to the UPS facility, M.M. told another employee that "everything had gone fine." *Id.* at ¶ 5.

But the next day, M.M. called a UPS help line and reported "an unsettling experience" during her training with Mr. Johnson. Doc. 32-3 at ¶ 3; *id.* at pp. 8–9. UPS Security Supervisor Rosaline Dunkley then led an investigation into M.M.'s report. *Id.* at

2

¶ 3; *id.* at pp. 8–24.  M.M. told Ms. Dunkley that Mr. Johnson did numerous things that made her uncomfortable, including taking her to his house to use the bathroom, telling her that there were "short shorts and UPS thong" uniforms available for her, asking if she ever answered her door naked, and standing behind her with his hands next to hers on the steering wheel.  *Id.* at ¶¶ 3–4; *Id.* at pp. 9, 26–32.

Mr. Johnson told Ms. Dunkley, and testifies now, that, he placed his hand on the steering wheel for training, as he did with other trainees, and that he took her to his house to use the bathroom; he also acknowledged that he talked to her about customers answering the door naked.  *Id.* at ¶ 5; *id.* at pp. 10, 34–36; Doc. 36-1 at ¶¶ 13–15.  Mr. Johnson denied then and denies now the "short shorts" comment and asking if she answered the door naked.  Doc. 32-3 at 10; Doc. 36-1 at ¶¶ 15, 17.

Mr. Johnson also told Ms. Dunkley that he took drivers to his house many times.  Doc. 32-3 at 10.  Two employees told Ms. Dunkley that Mr. Johnson took them to his house during training, and an anonymous employee told Ms. Dunkley that he was "known for taking employees off route and that many male/female drivers have been to [his] house."  *Id.* at 12.  Mr. Johnson testifies that his house was used as an authorized package drop-off location for many years.  Doc. 36-1 at ¶¶ 7–9.

During Ms. Dunkley's investigation, a former female employee told her that Mr. Johnson rubbed her leg, said he wanted to "get into her uniform," made sexual advances towards her, and stood very close to her.  Doc. 32-3 at ¶ 6; *id.* at p. 11.  Ms. Dunkley did not discuss this former employee's allegations with Mr. Johnson.  Doc. 36-1 at ¶ 20; *see* Doc. 32-3 at 10.  Mr. Johnson provides texts with this former employee in which she tells

3

him that UPS "put words in [her] mouth" and that she did not write a statement for the investigation. Doc. 36-1 at ¶ 20; Doc. 36-8 at 2–3.

A few other employees told Ms. Dunkley that Mr. Johnson specifically requested to train M.M., that he previously took drivers to his house during training, and that there was "an unofficial directive" not to send female drivers to train with him because of a history of improper behavior. Doc. 32-3 at ¶ 7; *id.* at pp. 12, 38, 40. Mr. Johnson disputes the directive allegation, testifying that he trained many female drivers, and he provided an email from the person in charge of assignments saying that there is no such directive. Doc. 36-1 at ¶ 18; Doc. 36-7.

Mr. Johnson provides texts with another UPS employee who said that when Ms. Dunkley interviewed her, it was "[v]ery much giving witch hunt vibes." Doc. 36-1 at ¶ 12; Doc. 36-6 at 2. The employee also told Mr. Johnson that she "[doesn't] know [him] to be that guy." Doc. 36-6 at 3. That employee is not included in Ms. Dunkley's investigation report. *See* Doc. 32-3 at 8–24.

After the investigation, Ms. Dunkley concluded that Mr. Johnson violated UPS policy by making inappropriate comments to M.M. and taking her to his house during training. *Id.* at ¶ 8; *id.* at pp. 12–13. Ms. Dunkley reported her findings to Chris Franzoni and Panise Perry in UPS Human Resources. *Id.* at ¶ 8. They concluded that Mr. Johnson's conduct warranted termination. Doc. 32-1 ¶ 10.

Because Mr. Johnson was only two months away from his retirement benefits vesting, UPS offered him a part-time position at a different location until his benefits vested. *Id.* at ¶¶ 10, 13. Mr. Johnson declined the part-time position and was terminated

on March 20, 2023, at the age of 54.  *Id.* at ¶ 13; Doc. 36-1 at ¶ 21.  He was replaced by a younger female worker.  Doc. 36-1 at ¶ 19.

### III. Discussion

#### A. The Age Discrimination Claim

The ADEA provides that an employer may not "fail or refuse to hire or discharge any individual or otherwise discriminate against any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  To prevail on an ADEA claim, a plaintiff must show by direct or circumstantial evidence that age was the "but-for" cause of the challenged employment decision.  *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 63 (4th Cir. 2023) (cleaned up).  Direct evidence of age discrimination may be shown when the employer "announced, or admitted, or otherwise unmistakably indicated that age was a determining factor."  *Palmer*, 72 F.4th at 63.  Absent direct evidence of intentional age-based discrimination, ADEA claims are analyzed under the *McDonnell Douglas* burden-shifting framework.  *Palmer*, 72 F.4th at 63; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under the *McDonnell Douglas* burden-shifting framework, the plaintiff must first establish a prima facie case of age discrimination.  *See Palmer*, 72 F.4th at 63; *see also Bandy*, 59 F.4th at 712 n.3 (summarizing the elements of a prima facie case in an age discrimination case).  The employer must then "articulate a non-discriminatory or non-retaliatory reason for the adverse action."  *Palmer*, 72 F.4th at 63.  If the employer does so, the plaintiff must prove by a preponderance of the evidence that "the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory."  *Id.*

Mr. Johnson has not presented any direct evidence of age discrimination. But he has made a prima facie showing of discrimination.

UPS has presented evidence of a legitimate non-discriminatory reason for the termination. Doc. 32-3 at ¶ 8; Doc. 32-1 at ¶¶ 10, 14. It is undisputed that M.M. made a sexual harassment complaint, that UPS had a written policy against such harassment, and that during the investigation several witnesses told the investigator that Mr. Johnson also engaged in harassing conduct toward them. Doc. 32-3 at ¶¶ 3, 8.

In an effort to rebut UPS's evidence, Mr. Johnson relies on his age, the age of the person who replaced him, the fact that he was just shy of vesting in the retirement plan, and a claim that the investigation and his termination were not fair. But it is undisputed that UPS offered to defer his termination until his retirement benefits vested and that someone other than the purportedly unfair investigator made the decision to discharge him. Doc. 32-1 at ¶¶ 9–13; Doc. 36-1 at ¶ 21. Moreover, this is not a case where the conduct leading to termination was a minor paperwork error, as in *Westmoreland v. TWC Administration LLC*, 924 F.3d 718, 727 (4th Cir. 2019), on which Mr. Johnson relies; it was a situation where the decisionmakers had multiple reports of sexual harassment.

Certainly, there are disputed questions of fact. But in light of the undisputed evidence, those disputed facts are not material. UPS is entitled to summary judgment on this claim.

### B. Wrongful Discharge Claim

Mr. Johnson contends he was discharged because of his sex and age in violation of North Carolina's public policy as set forth in N.C. Gen. Stat. § 143-422.2. Doc. 1 at

6

¶¶ 32–42. "[T]he North Carolina Supreme Court has explicitly adopted the Title VII evidentiary standards in evaluating a state claim under § 143-422.2," and the *McDonnell Douglas* framework applies. *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995) (citing *N.C. Dep't of Corr. v. Gibson*, 308 N.C. 131, 136, 301 S.E.2d 78, 82–83 (1983)); *accord Stunzenas v. Lincoln Nat'l Corp.*, No. 21-CV-430, 2022 WL 17414975, at *10 (M.D.N.C. Dec. 5, 2022) (noting that analysis of a plaintiff's federal discrimination claim is dispositive of the parallel North Carolina wrongful discharge claim).

For the reason just discussed, Mr. Johnson's wrongful discharge claim based on age discrimination will be dismissed. And his sex discrimination claim also fails for essentially the same reason: he has presented no direct evidence of sex discrimination, and while he has established a prima facie case, he has not offered evidence to show that UPS's proffered legitimate reasons for his discharge was a pretext.

### C. ERISA Claim

Mr. Johnson alleges that he was discharged to prevent him from receiving his full retirement benefits in violation of ERISA, 29 U.S.C. § 1140. Doc. 1 at ¶¶ 43–48. "Those employees waiting to vest in a qualified pension plan have a cause of action [under § 1140] against an employer who discharges them for the purpose of blocking their vesting in the company's pension plan." *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 236 (4th Cir. 1991). To prove this cause of action, a plaintiff must show "specific intent of the employer to interfere with an employee's pension rights." *Id.* at 239. In the absence of direct evidence of such intent, the Fourth Circuit applies the *McDonnell Douglas* framework. *Id.*

7

Mr. Johnson's pension rights were just weeks away from vesting when he was terminated. Doc. 32-1 at ¶ 13. But the evidence is undisputed that UPS offered to keep him on until those benefits vested. *Id.* Mr. Johnson has presented no other evidence to support his claim that UPS intended to interfere with his pension rights. Assuming an inference of specific intent might be drawn from the temporal proximity here, it is fully rebutted by the undisputed evidence that UPS accompanied his termination with a way Mr. Johnson could keep his retirement benefits. *Id.*

## IV. Conclusion

UPS has presented evidence of a legitimate non-discriminatory reason for terminating Mr. Johnson; he has not rebutted that evidence, so his ADEA claim fails. For the same reason, his wrongful discharge claim fails. And UPS has put forward unrebutted evidence that it did not terminate Mr. Johnson for the purpose of interfering with his pension rights, so his ERISA claim also fails. UPS is entitled to summary judgment in full.

It is **ORDERED** that the defendant's motion for summary judgment, Doc. 32, is **GRANTED**. Judgment will be entered separately.

This the 10th day of September, 2025.

_____
UNITED STATES DISTRICT JUDGE